# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 894 - 1,2 | **DATE** | 7/1/2003 |
| **CASE TITLE** | USA vs. CRAWFORD and SCHOENIG | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. This testimony is uncontested. On these facts, the Court is persuaded that this is an atypical case. Crawford and Schoenig are impossible to replace and critical to the continued operations of NCI and the employment of its personnel. Therefore, defendants' motion for a downward departure is granted. The probation officer calculated defendants' offense level at 13 and their criminal history category at I. In order to accomplish the goal of protecting the NCI employees, the Court will depart three levels to an offense level of 10.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | JUL 02 2003 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | 03 JUL -1 PM 5:55 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 02 CR 894 |
| v. ) | |
| ) | Honorable John W. Darrah |
| GEORGE D. CRAWFORD and ) | |
| THOMAS R. SCHOENIG, ) | |
| ) | |
| Defendants. ) | |

DOCKETED
JUL 0 2 2003

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants', George D. Crawford and Thomas R. Schoenig's, Joint Motion for Downward Departure. The Government submitted a response to Defendants' motion, and an evidentiary hearing was held on the motion. For the reasons that follow, Defendants' Joint Motion for Downward Departure is granted.

The sentencing court may depart from the range stated in the guidelines if it determines that there exists an aggravating or mitigating circumstance or characteristic of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b). Section 3553(b) authorizes departures only to account for factors not adequately considered by the guidelines "or because a considered factor is present in an exceptional way." *United States v. King*, 150 F.3d 644, 650 (7th Cir. 1998).

> The Commission does not foreclose the possibility of an extraordinary case that because of a combination of such characteristics or circumstances, differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case.

U.S.S.G. § 5K2.0. As noted in *United States v. Morgan*, No. 96 CR 200, 1996 U.S. Dist. Lexis

16065, at *4-5 (N.D. Ill. Oct. 28, 1996):

> departures are appropriate where other innocent third parties – such as employees – will suffer extraordinary harm.
>
> In the context of family, extraordinary harm has been reserved for those few cases in which family members are unusually dependent on the defendant. Similarly, departures based upon harm to a defendant's business must be reserved for those rare cases in which the financial viability of the business is unusually dependent upon the defendant.

Defendants operate a collection agency incorporated as Northwest Collectors, Inc. ("NCI"). NCI engages in third-party collections, primarily of medical debts, and has between 350 and 400 active clients. Crawford and Schoenig are the chairman and president, respectively, of NCI. The business has nine employees. In response to customer demands, NCI increased its staff, rented larger office space, and invested in new technology. These actions resulted in NCI's incurring substantial debt, and the Defendants began manipulating NCI bank accounts to stay in business.

Defendants pled guilty to one count of bank fraud in violation of 18 U.S.C. § 1344 by creating fictitious balances in NCI's accounts at two banks and making withdrawals on those fictitious balances.

In order to pay restitution to that bank, Crawford refinanced his home and loaned NCI $130,000 from that refinancing. Crawford also withdrew $100,000 from his personal IRA's and loaned that amount to NCI. Schoenig incurred a $250,000 mortgage on his home in order to pay his portion of the bank's loss. In exchange for these loans, NCI makes mortgage payments and other payments to replenish Crawford's IRA's.

NCI is a highly automated and completely computerized business. Each night, the computer system automatically processes a list of debtors to be called the next day. These debtors are called by predictive dialers, an automated system that only transfers the call to a collector when it detects

a live voice. If the debtor does not answer the call, the computer system will call the debtor after a set period of time, prescribed by federal law, has passed. If the call is successful, NCI also sends collection letters to debtors through an automated system which prints all of NCI's collection letters at a facility in Birmingham, Alabama. The system is very complex and requires daily maintenance. Schoenig and a programmer developed the software for this system.

When NCI could no longer afford technical help, Schoenig took over the role of IT manager due to his role in providing automation for the company. As IT manager, he runs the main system of the office, the predictive dialer, the interactive-voice-response module, the scanning index system, the fax server and a digital telephone system and spends a great deal of time adjusting the system. Schoenig also supervises three collection units and handles NCI's finances, including payroll, debt repayment, and the quarterly filing of all tax returns. Schoenig also participates on major sales with other salespeople.

As mentioned above, NCI attempts to collect debts from persons who are parties to lawsuits seeking to recover damages. Crawford is solely responsible for handling these matters, including all claims involving workers' compensation and personal injury and deals directly with attorneys representing those claimants and the insurance companies. Crawford also receives the bulk of incoming calls for NCI and is also in charge of a collection unit.

A survey by the American Collectors Association International ("the ACA survey") was admitted into evidence. The ACA survey set out reasonable salaries for owners, collectors, and managers in the collections field. The average salary of an IT manager was $76,000 per year. The ACA survey indicated that the average salary for an owner would be $133,998.00 per year. A replacement for Schoenig would have to be knowledgeable about the computer system as well as the

collections business. Based on the survey, Schoenig's replacement would earn $209,998.00 per year, and Crawford's replacement would earn at least $133,998.00. However, neither Schoenig nor Crawford receive a salary from NCI.

NCI's gross revenues for 2002 were $650,000.00. After payment of NCI's debts incurred to make restitution, the net profit is only $40,000.00 to $50,000.00 before taxes. NCI could not afford to replace Schoenig and Crawford or to hire any additional employees.

If Defendants were unable to perform their duties for NCI, the company would cease doing business. NCI would default on the loans.

The guidelines identify factors that make a case atypical. Courts may depart based on these factors if the guidelines do not already take a factor into account. Departures are discouraged on factors that the Commission determines do not make a case atypical. Courts may depart based on factors that are already taken into account, if such factors are "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States*, 518 U.S. 81, 96 (1996). If a factor is not identified in the guidelines at all, the Court will consider the structure and theory of the guidelines in determining whether that factor makes the case atypical and, thus, is a basis for departure. The issue here is whether the guidelines address departures in order to protect innocent NCI employees from losing their jobs.

Schoenig is the only employee with the skill, experience, and knowledge to administer NCI's automated system on a daily basis. Crawford is the only employee with the skill, experience, and relationships to maintain NCI's operations regarding workers' compensation and insurance company collections. The impact the loss of Crawford's and Schoenig's services in their daily employment would have on NCI is unique and significant. It is undisputed that Crawford and Schoenig work

without compensation. If Crawford and Schoenig were not available to perform their duties, NCI would not remain in business, and its employees would lose their jobs. Thomas Schoenig testified:

> Q. Is the company doing well now?
>
> A. It's holding its own and paying back all the debt.
>
> Q. All the time?
>
> A. All the time.
>
> Q. And are you working all the time?
>
> A. Yes, I am.
>
> Q. Is Mr. Crawford working all the time?
>
> A. Yes, he is.
>
> \* \* \*
>
> Q. And if you were, unfortunately, to go to jail and Mr. Crawford were to go to jail, would the business have to close its doors?
>
> A. Yes, it would.
>
> Q. Is there any chance at all, any small chance at all that Adam [Crawford] and the other employees can keep this concern going till [sic] you get out of jail?
>
> A. Absolutely not.
>
> Q. Even for a short period of time? If His Honor were to see fit to sentence you and your partner to prison, is there any chance, again, that the business can stay afloat and those people keep their jobs till [sic] you get back?
>
> A. I don't know what the definition of a short time is.
>
> Q. A year.
>
> A. Absolutely. Never would float a year.

* * *

>   Q. Now, If there is a default on the loans, if you're gone, there's a default, the company can't pay back the bank for the loans, what happens to the business?
>
>   A. Well, obviously the business goes under. Everything goes under.
>
>   Q. All seven employees are out in the street?
>
>   A. They're definitely out in the street.

(Tr. at 26 ll. 5-12; 27 ll. 14 to 28 ll. 1-3; 29 ll. 15-21).

This testimony is uncontested. On these facts, the Court is persuaded that this is an atypical case. Crawford and Schoenig are impossible to replace and critical to the continued operations of NCI and the employment of its personnel. Therefore, Defendants' motion for a downward departure is granted.

The probation officer calculated Defendants' offense level at 13 and their criminal history category at I. In order to accomplish the goal of protecting the NCI employees, the Court will depart three levels to an offense level of 10. Defendants' guideline range after departure is six to twelve months.

Dated: July 1, 2003

JOHN W. DARRAH
United States District Judge